UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METALDYNE, LLC,

       Plaintiff,

                                Case No. 17-cv-10758

v.

                                HON. MARK A. GOLDSMITH

JD NORMAN INDUSTRIES, INC.,

       Defendant.

_____/

**OPINION AND ORDER
DENYING PLAINTIFF'S "EMERGENCY" MOTION FOR
DECLARATORY JUDGMENT OR, IN THE ALTERNATIVE,
FOR PRELIMINARY INJUNCTION (Dkt. 10)**

This matter is before the Court on Plaintiff Metaldyne, LLC's "emergency" motion for a declaratory judgment or, in the alternative, a preliminary injunction (Dkt. 10), to which Defendant JD Norman Industries, Inc. filed a response (Dkt. 19). A hearing on the motion was conducted on April 4, 2017. For the reasons stated below, the Court denies the motion.

**I. BACKGROUND**

Metaldyne manufactures and supplies certain automotive parts to JD Norman pursuant to the parties' contracts. 2d Am. Compl. ¶¶ 8, 10; Pl. Br. at 2, 7-9; Def. Resp. at 4. JD Norman performs certain machining services on these parts and then delivers them to General Motors Corporation for use in the 6.6L Duramax, Gen V 5.3L and 6.2L and L850 programs ("GM programs"), as well as to Fiat Chrysler Automobiles for use in the Tigershark 2.0L and 2.4L programs ("FCA programs"). Id. The payment terms for goods supplied for the Gen V 5.3L GM program are Net-45, while the payment terms under the other GM programs are Net-47. 2d

1

Am. Compl. ¶ 9.[1]  The payment terms for goods supplied for the FCA programs are Net-70.  Id. ¶ 11.

Metaldyne alleges that, within the last several months, JD Norman "has repeatedly failed to make timely payments for the shipment of parts delivered under the GM programs and the FCA programs." Id. ¶ 13; Pl. Br. at 9 ("[S]ince November 2016, JD Norman has paid 141 of 152 invoices late, with days delinquent ranging from 1 to 27 (18 invoices were paid more than 16 days late)."). Metaldyne claims that JD Norman's failure to make timely payments amounts to a breach of the parties' contracts and, as of March 8, 2017, JD Norman owed Metaldyne approximately $2,785,385.  2d Am. Compl. ¶¶ 13, 15.[2]

Metaldyne further states that it sent a letter to JD Norman on March 6, 2017 demanding that JD Norman would: "(1) pay its past due arrearage to Metaldyne of $475,251.00; (2) provide adequate assurances that it would make full payment for all future amounts owed as such payments became due; (3) agree to Net-20 payment terms going forward; and (4) provide sufficient financial information to demonstrate it was not suffering financial difficulties." Id. ¶ 17; see also 3/6/2017 Demand Letter, Ex. A to Am. Compl., at 2 (Dkt. 9-1).  Metaldyne claims that JD Norman rejected the Net-20 proposal, as well as the demand to provide financial information.  2d Am. Compl. ¶ 19; Pl. Br. at 17 ("Late in the day on March 8th, and again via letter received from its counsel on March 9th, JD Norman rejected Metaldyne's demand for Net-

---

[1] These "Net" numbers refer to the due dates for JD Norman's payments to Metaldyne following JD Norman's receipt of the parts.  Pl. Br. at 2-3; Def. Br. at 4-5.  For example, Net-45 means that JD Norman would pay Metaldyne 45 days "after JD Norman picks up the parts from Metaldyne's shipping dock." Pl. Br. at 3.

[2] In its response brief, JD Norman contends that it was "current on its payment obligations to Metaldyne" at the times the initial complaint, first amended complaint, second amended complaint, and the present motion were filed, see Def. Resp. at 5, which Metaldyne appears to acknowledge, see also Pl. Br. at 22 (stating "payments are current as of this filing").

20 payment terms and rejected its demand that JD Norman provide Metaldyne with any financial information." (emphasis omitted)). Metaldyne alleges that, by failing to respond to the demand letter, JD Norman "repudiated the contract pursuant to [Mich. Comp. Laws §] 440.2609(4)." 2d Am. Compl. ¶ 20; Pl. Br. at 17-21.

In its breach-of-contract claim, Metaldyne alleges that JD Norman breached the parties' contracts by: (i) repeatedly failing to timely pay in accordance with the contracts' terms; (ii) failing to provide adequate assurance, which amounts to repudiation of the contracts; and (iii) breaching its obligation of good faith and fair dealing. 2d Am. Compl. ¶¶ 27-29. Because of this purported breach and repudiation, Metaldyne asserts in its declaratory-judgment claim that it is entitled to exercise its rights as an aggrieved seller pursuant to Mich. Comp. Laws § 440.2703 and the common law. Id. ¶ 38.

## II. ANALYSIS

Metaldyne filed the present "emergency" motion on March 17, 2017, claiming that "there is a reasonable risk that JD Norman is financially distressed and therefore will fail to pay Metaldyne millions of dollars that are owed for goods already delivered and to be delivered to JD Norman." Pl. Br. at 1-2. Metaldyne seeks a declaratory judgment or, in the alternative, a preliminary injunction. The Court addresses each request in turn.

### A. Declaratory Judgment

Metaldyne requests a declaratory judgment that it may exercise its rights as an aggrieved seller under both Mich. Comp. Laws § 440.2703 and the common law. Pl. Br. at 1; Am. Compl. ¶ 42. This request is premised entirely on JD Norman's purported breach and repudiation of the parties' contracts. See Am. Compl. ¶ 38 ("As a result of [JD Norman's] breach and its

3

repudiation of the contracts, Metaldyne is entitled to exercise its rights as an aggrieved seller pursuant to [Mich. Comp. Laws §] 440.2703 and the common law.").

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); Fed. R. Civ. P. 57 ("These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201."). The exercise of jurisdiction in a declaratory judgment action is consigned to the court's discretion. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). In exercising that discretion, courts consider five factors:

> (1) Whether the declaratory action would settle the controversy;
>
> (2) Whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
>
> (4) Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) Whether there is an alternative remedy which is better or more effective.

Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 554 (6th Cir. 2008) (citing Grand Trunk W. R.R. Co. v. Consol. Rail Co., 746 F.2d 323, 326 (6th Cir. 1984)).

Although Metaldyne correctly states in its motion the five-factor test regarding the exercise of jurisdiction in a declaratory-judgment action, see Pl. Br. at 15-16, it does not actually apply that test in any meaningful way. In fact, Metaldyne does not address how any of the five

factors weigh in favor of the Court exercising jurisdiction over this declaratory judgment matter at this time. As such, Metaldyne has failed to carry its burden for its present request for a declaratory judgment.

JD Norman further argues that there are numerous issues that require further fact-finding in this case, including whether JD Norman materially breached the contracts with Metaldyne, and that this precludes a declaratory judgment. See generally Def. Resp. at 12-18. The Court agrees.

"[W]hen ruling under the Declaratory Judgment Act, usually only purely legal issues" that "will not be clarified by further factual development" are "fit for judicial review." Nat'l Rifle Ass'n of Am. v. Magaw, 132 F.3d 272, 290 (6th Cir. 1997). This is consistent with the approach courts have adopted in construing a party's motion for declaratory judgment as a "motion for summary judgment on an action for a declaratory judgment." Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc., 560 F.3d 935, 943 (9th Cir. 2009) (emphasis added); Int'l Bhd. of Teamsters v. E. Conference of Teamsters, 160 F.R.D. 452, 456 (S.D.N.Y 1995) (same). Metaldyne's failure to establish its entitlement to a declaratory judgment under the appropriate summary-judgment standard also warrants denial of this portion of its motion.

Regarding JD Norman's purported breach of contract for failing to timely pay Metaldyne according to the contracts' terms, there remain several issues of fact on whether such allegations amount to material breaches. First, Metaldyne claims that, between November 1, 2016 and March 17, 2017, "JD Norman has paid 141 out of 152 invoices late, including 18 invoices paid more than 16 days late, with payments averaging 7 days delinquent." Pl. Br. at 2, 9. In response, JD Norman challenges Metaldyne's factual conclusions, first arguing that the proper time period

5

for review should begin in June 2016, as that is the time when the parties' prior case in this district was settled. Def. Resp. at 8 & n.4. Based on this time period, JD Norman then claims that it paid at least 50 invoices early, and that, on average, it has only been 4.8 days late on all payments to Metaldyne since June 2016. Id. at 8. Thus, there is presently a factual dispute concerning the timeliness of JD Norman's payments.

Second, JD Norman contends that "marginally late payments are commonplace in the automotive industry," id., and that its late payments do not constitute a substantial or material breach of the parties' contracts, id. at 12-13. The case law is undoubtedly in JD Norman's favor on this issue. See JD Norman Indus., Inc. v. Metaldyne, LLC, 2016 WL 1637561, at *6 (E.D. Mich. Apr. 16, 2016) (collecting cases and holding that "[c]ourts in this district have recognized that late payment, or non-payment, of some invoices does not constitute a substantial breach in the context of an automotive supply relationship"); see also Hodak v. Madison Capital Mgmt., LLC, 348 F. App'x 83, 90 (6th Cir. 2009) ("The determination whether a material breach has occurred is generally a question of fact answered by weighing the consequences of the breach in light of the customs of performance attendant to similar contracts."). Further fact-finding is required to determine the customs of performance regarding these automotive purchase orders and whether JD Norman's late payments amount to a material breach of such orders.

There also remain several issues of fact surrounding JD Norman's purported repudiation of the contracts. For instance, Metaldyne argues that it had "reasonable grounds to demand adequate assurance" because JD Norman: (i) "repeatedly failed to pay Metaldyne on time"; (ii) "reportedly struggled with a recently launched program"; (iii) "cancelled and [withdrew] from another program with another of Metaldyne's related companies"; and (iv) "increased its orders on another program, which is often a signal that it is building a bank of parts." Pl. Br. at 17.

Metaldyne then concludes that, "[t]o experienced automotive suppliers . . . these are all indicators of an automotive supplier who is likely in trouble with its lender or equity source and whose funds available to pay suppliers for goods delivered are usually restricted." Id. While this may be the case, the Court is not an "experienced automotive supplier" and Metaldyne's conclusion will require some sort of factual support to determine whether or not these "indicators" would actually provide "reasonable grounds" to demand assurance.

There are also disputed factual issues regarding Metaldyne's demand for a Net-20 payment term and access to potentially confidential financial information constituted a "justified" demand, Mich. Comp. Laws § 440.2609(4); Precision Master, Inc. v. Mold Masters Co., Nos. 268501, 268938, 2007 WL 2012807, at *4 (Mich. App. Ct. July 12, 2007) (per curiam) (holding that the "demands by plaintiff did not constitute merely 'adequate assurances' of performance, but in actuality comprise a unilateral attempt to alter and favorably enhance the contractual provisions"); Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co., 532 F.2d 572, 582 (7th Cir. 1976) (demand for adequate assurances of performance is "a protective device when reasonable grounds for insecurity arise; it is not a pen for rewriting a contract in the absence of those reasonable grounds having arisen"), and whether the assurances JD Norman offered were adequate according to the "commercial standards" of the automotive industry, Mich. Comp. Laws § 440.2609(2) ("[T]he reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.").

Given the number of issues requiring further factual development in this case, a declaratory judgment that Metaldyne is entitled to exercise its rights under Mich. Comp. Laws § 440.2703 and the common law is premature. See Wal-Mart Real Estate Bus. Trust v. Eastwood, LLC, No. 1:13-cv-1348, 2015 WL 12910670, at *7 (W.D. Mich. July 27, 2015)

(recognizing that awarding a declaratory judgment would require the district court "to determine the substantive breach of contract claims," which would be "premature" because "there remain significant factual disputes" surrounding those claims). A declaratory judgment is not appropriate at this time, and this portion of Metaldyne's motion is denied.

### B. Preliminary Injunction

The standard for a preliminary injunction is well known: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Typically, no one factor is dispositive; rather, they are to be considered as an integrative whole. Liberty Coins, L.L.C. v. Goodman, 748 F.3d 682, 690 (6th Cir. 2014) ("Each of these factors should be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction.").

As an initial matter, Metaldyne is requesting a preliminary injunction that would require "JD Norman to pay Metaldyne at Net-20 terms for goods sold in order to protect payment for goods shipped to JD Norman." Pl. Mot. at iv. However, the "purpose of a preliminary injunction is simply to preserve the status quo." United States v. Edward Rose & Sons, 384 F.3d 258, 261 (6th Cir. 2004) (emphasis added); Delphi Auto. PLC v. Absmeier, 167 F. Supp. 3d 868, 879 (E.D. Mich. 2016) (same). Granting Metaldyne's requested preliminary injunction would go beyond maintaining the status quo and would, in effect, improperly rewrite the parties' contracts. See Corbin v. Texaco, Inc., 690 F.2d 104, 105 (6th Cir. 1982) ("In equity, a court cannot in effect alter specific terms of the contract by a preliminary injunction, unless there is a contention, such as fraud or mistake, that justifies the revision."). While it may be "necessary to alter the

8

existing situation" if the "currently existing status quo itself is causing one of the parties irreparable injury," United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth., 163 F.3d 341, 349 (6th Cir. 1998), Metaldyne does not argue that the existing Net-45, -47, or -70 payment terms were the result of fraud or mistake, or that the terms themselves are causing the alleged irreparable injury. For this reason alone, the request is improper and warrants denial. Furthermore, a proper balancing of the four factors further counsels against entering Metaldyne's requested preliminary injunction.

First, Metaldyne must show "more than a mere possibility of success" on the merits of its claim. Ne. Ohio Coal. for Homeless v. Husted, 696 F.3d 580, 591 (6th Cir. 2012) (per curiam). Given the numerous genuine factual issues that remain unresolved regarding the alleged breach and repudiation of the contracts, see supra, Metaldyne has failed to establish that it has a strong likelihood of success on the merits.

Second, Metaldyne has failed to show the very real possibility of irreparable harm absent immediate equitable relief. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012). Metaldyne posits that "[i]f JD Norman files for bankruptcy protection and/or runs out of sufficient working capital to pay its customers and vendors, then Metaldyne will very likely not be paid what it is owed." Pl. Br. at 23. This assertion goes only to monetary damages, and its mere apprehension about any conceivable future bankruptcy or cessation of operations does not rise above the "speculative or theoretical" level. Contech Casting, LLC v. ZF Steering Sys., LLC, 931 F. Supp. 2d 809, 818 (E.D. Mich. 2013); see also Delphi Auto. PLC, 167 F. Supp. 3d at 885 (harm must be "certain and immediate" and not "speculative or theoretical"); Smith v. State Farm Fire & Cas. Co., 737 F. Supp. 2d 702, 713

(E.D. Mich. 2010) ("In establishing the element of irreparable harm, a party seeking an injunction bears a heavy burden and must demonstrate more than an unfounded fear of harm.").

Third, the balance of equities does not tip in favor of Metaldyne. Again, Metaldyne's purported monetary injury is based upon the speculative notion of a "possible bankruptcy filing" or if "JD Norman ceases operations." Pl. Br. at 24. In response, JD Norman contends that it would be substantially harmed by an earlier payment date under a Net-20 term because it would merely "compound the problems Metaldyne complains of and unduly squeeze JD Norman's cash flow." Def. Resp. at 24. The Court finds that the issuance of Metaldyne's requested injunction would likely cause more harm to JD Norman than it would to Metaldyne.

Finally, although the public has an interest in having contracts enforced, see Cellnet Commc'ns, Inc. v. New Par, 291 F. Supp. 2d 565, 572 (E.D. Mich. 2003), there still remain several genuinely disputed factual issues concerning JD Norman's purported breach of the parties' contracts. The public interest would not be served by a court unilaterally altering contractual terms that favor the moving party absent a finding that the other contracting party's conduct constituted a material breach.

Metaldyne's request for a preliminary injunction is denied.

### III. CONCLUSION

For the reasons stated above, Metaldyne "emergency" motion for a declaratory judgment or, in the alternative, a preliminary injunction (Dkt. 10) is denied.

SO ORDERED.

Dated: April 19, 2017                   s/Mark A. Goldsmith
  Detroit, Michigan                   MARK A. GOLDSMITH
                                         United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 19, 2017.

s/Karri Sandusky
Case Manager
